E. B. METAL & RUBBER INDUSTRIES, INC., Appellant, v COUNTY OF WASHINGTON et al., Defendants, and TOWN OF WHITEHALL, Respondent. (Action No. 1.)

ROCHESTER GERMICIDE COMPANY, Appellant, v COUNTY OF WASHINGTON et al., Defendants, and TOWN OF WHITEHALL, Respondent. (Action No. 2.)

Third Department, July 19, 1984

### APPEARANCES OF COUNSEL

*DeGraff, Foy, Conway, Holt-Harris & Mealey* (*Robert H. Iseman* and *Brian J. McCann* of counsel), for E. B. Metal & Rubber Industries, Inc., appellant.

*Harris, Beach, Wilcox, Rubin & Levey* (*Edward R. Macomber* and *Douglas A. Foss* of counsel), for Rochester Germicide Company, appellant.

*LaPann, Reardon, Fitzgerald & Firth* (*Jennifer A. Jensen* and *Peter A. Firth* of counsel), for Town of Whitehall, respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

On March 14, 1977, an earthen dike along the Champlain Barge Canal was breached causing water to flood the

premises of E. B. Metal & Rubber Industries, Inc. (E. B. Metal), and cause extensive damage. In addition, personal property of Rochester Germicide Company (Rochester) located on E. B. Metal's premises was also damaged. The property of E. B. Metal, located in the Village and Town of Whitehall in Washington County, is situated on an island bounded on the west by the canal and on the other three sides by Wood Creek.

E. B. Metal brought an action against the Town of Whitehall to recover damages, alleging that the town negligently participated in the construction of the dike and, thereafter, negligently performed its duty to maintain the dike. Rochester also sued the same defendant on the same grounds. Also named as defendants in both actions were the Village of Whitehall and County of Washington.[1]

In February, 1983, plaintiffs moved for partial summary judgment declaring that the town "undertook a duty to maintain the dike" and "breached that duty". The town cross-moved for an order denying plaintiffs' motions and for summary judgment on all issues of liability. Special Term, finding that no special relationship existed between the town and plaintiffs upon which liability of a municipality in the exercise of a governmental function might be based, applied the doctrine of sovereign immunity and, accordingly, denied plaintiffs' motions for partial summary judgment and granted the town judgment against plaintiffs. These appeals by plaintiffs ensued.

The dike was constructed between 1935 and 1937 as a Federal Works Progress Administration (WPA) project. Its purpose was to provide depression-era employment and flood protection, especially to a local silk mill known as Champlain Spinners, E. B. Metal's predecessor in interest to the property. While the passage of time has clouded the record, it is clear that the town was the sponsor of the project proposal made to the WPA in November, 1935 for

---

1. E. B. Metal also brought actions against various insurance companies and against the State of New York. We affirmed an order of summary judgment in favor of two defendant insurance companies on the ground of a flood exclusionary clause (*E. B. Metal & Rubber Inds. v Federal Ins. Co.*, 84 AD2d 662). We also affirmed the dismissal of E. B. Metal's first cause of action against the State premised on a permit issued to E. B. Metal's predecessor in interest, while holding E. B. Metal's cause of action grounded upon the State's alleged improper design, construction, use and management of the canal to be viable (*E. B. Metal & Rubber Inds. v State of New York*, 84 AD2d 659).

the construction of the dike. That proposal states, among other things, that the "Town will do required maintenance work" after completion of the dike. It is also clear that the State issued a revocable permit in November, 1935 to Champlain Spinners to "construct and maintain a dike on canal lands in the Village of Whitehall". That permit stated that, "During the period in which this permit may remain in force, the said dyke shall be kept * * * in a condition of good repair". Aside from these ancient declarations concerning maintenance of the dike, it is evident from the record that the town did not, regardless of any duty to do so, maintain the dike. It is also clear that Champlain Spinners and its successor, E. B. Metal, did perform maintenance work on the dike, albeit intermittently and perhaps by default. There have been no construction changes on the dike since it was originally constructed.

With the above factual recitation as background, we turn to the issue of whether the town may claim the defense of sovereign immunity. We conclude that it may not.

The State and its political subdivisions have waived sovereign immunity (Court of Claims Act, § 8; 2C Warren, Negligence [3d ed], Municipal Corporations, § 2.01, pp 369-370). The waiver, however, is not absolute. Municipalities may be held liable for injuries or damages resulting from their negligent performance of a proprietary function, as distinguished from the failure to perform a purely governmental function. A single governmental undertaking may partake of both characteristics. Unquestionably, the construction of a dike for the purpose of flood control is both governmental and proprietary. The town would be entitled to immunity in its lawful exercise of sovereign power in the planning and design of the dike, but would be subject to liability when damage is occasioned because of improper methodology in carrying the plan into execution (*Office Park Corp. v County of Onondaga,* 64 AD2d 252, affd 48 NY2d 765). Only the decision of whether to construct a public improvement, as well as the discretion exercised with respect to design and plan, are granted immunity (see *Matter of Charles v Diamond,* 41 NY2d 318, 326; *Weiss v*

*Fote,* 7 NY2d 579; *Bartels v County of Westchester,* 76 AD2d 517; 40 NY Jur, Municipal Corporations, § 1019, pp 277-278).

Here, the decision of the town to sponsor the project and the planning and design thereof were governmental because they constituted the exercise of municipal discretion. However, the construction and maintenance of the dike was proprietary because the dike was a voluntary municipal undertaking not on behalf of or. at the behest of the State, but under the direct control of the Federal Government. Further, the dike was of singular benefit to the town's inhabitants because it protected a major local employer and the town would obtain a pecuniary benefit in the preservation of an important element of its tax base.

Our conclusion that the town may be liable for damages proximately caused by its negligent construction and maintenance of the dike is supported by analogy to the Canal Law. Pursuant to section 120 of the Canal Law, the State has waived its sovereign immunity from liability for any "thing connected with the canals". We have already determined that waiver to encompass the instant situation (*E. B. Metal & Rubber Inds. v State of New York,* 84 AD2d 659). Since anything connected with a canal would include a dike, it would be anomalous to hold the State liable for its canal-related activities but not a municipality when a municipality's immunity is derivative of the State's (2C Warren, Negligence [3d ed], Municipal Corporations, § 2.03 [2], pp 378-379).[2]

However, despite our conclusion that Special Term erred in applying the doctrine of sovereign immunity in favor of the town, we nevertheless hold that plaintiffs' motions for partial summary judgment were properly denied. Granting plaintiffs' motions would be illusory and would spare neither the court's nor the litigants' time and effort. The issue of plaintiffs' comparative negligence would still need to be resolved, which resolution would require a comparison of

---

2. While unnecessary to our conclusion that Special Term erred in granting sovereign immunity to the town, we nevertheless are of the view that Special Term was correct in finding the absence of any special duty running from the town to plaintiffs, as well as holding that plaintiffs are not third-party beneficiaries of the town's sponsorship of the WPA project.

the parties' culpable conduct (CPLR 1411), thereby necessitating a trial examination of the nature and extent of the town's alleged breach (see *Enker v Slattery Constr. Co.*, 34 AD2d 673). We deem it to be inappropriate here to split off by motion a factually unresolved proximate cause issue from the other issues in this negligence case.

Nevertheless, while the factual issue of the town's liability is inappropriate as a matter for partial summary judgment, we conclude that partial summary judgment declaring the unavailability of the defense of sovereign immunity with respect to the town's involvement in the construction and maintenance of the dike is proper (see Siegel, NY Prac, § 285, p 341). Such a declaration is appropriate under CPLR 3212 (subd [g]) and salvages something of value from an otherwise aborted CPLR 3212 motion.

The order should be modified, on the law, with costs to plaintiffs, by reversing so much thereof as granted defendant Town of Whitehall judgment on all issues of liability and denied plaintiffs' motion for partial summary judgment; partial summary judgment granted in plaintiffs' favor to the extent of declaring that the Town of Whitehall may not rely on the defense of sovereign immunity; and, as so modified, affirmed.

KANE, CASEY, WEISS and LEVINE, JJ., concur.

Order modified, on the law, with costs to plaintiffs, by reversing so much thereof as granted defendant Town of Whitehall judgment on all issues of liability and denied plaintiffs' motions for partial summary judgment; partial summary judgment granted in plaintiffs' favor to the extent of declaring that the Town of Whitehall may not rely on the defense of sovereign immunity, and, as so modified, affirmed.